# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

RICHARD P. GIELATA, on behalf of himself
and all others similarly situated,
   *Plaintiff*,
      v.

JAY W. EISENHOFER, and
GRANT & EISENHOFER, P.A.,
a Delaware professional association,
   *Defendants*.

Civil Action No. 11-cv-442-PB

CLASS ACTION

## PLAINTIFF'S MEMORANDUM OF LAW
## IN RESPONSE TO MARCH 19, 2012
## <u>ORDER TO SHOW CAUSE</u>

CRONIN & CO. LTD.
Thomas C. Cronin, Esq.
(admitted *pro hac vice*)
33 North Dearborn Street
Suite 2350
Chicago, Illinois 60602
tcc@cronincoltd.com
(312) 201 – 7100

PHILLIPS LAW OFFICE, PLLC
Roger B. Phillips, Esq.
NH Bar No. 2018
104 Pleasant Street
Concord, NH 03301
roger@phillipslawoffice.com
(603) 225 – 2767

JOSEPH N. GIELATA LLC
Joseph N. Gielata, Esq.
(admitted *pro hac vice*)
501 Silverside Road No. 99
Wilmington, DE 19809
joe@gielatalaw.com
(302) 507 – 4400

*Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………………………..ii

TABLE OF ABBREVIATIONS AND DEFINED TERMS………………………………..v

PRELIMINARY STATEMENT…………………………………………………………1

ARGUMENT…………..…………………………………………………………………...3

I.      What the Court did (or might have done) in 2007 is not germane to the
theory of liability in this case because of the particular dichotomy between
liability for breach of contract and damages resulting from the breach……………....3

II.     The First Circuit strongly disfavors *sua sponte* dismissals and therefore
the Court should rigorously apply Rule 12(b)(6)'s liberal standard of review…………..6

      A.    The detailed and well-grounded allegations in the
complaint are entitled to the presumption of truth………………………………7

      B.    The claims in the complaint are plausible and sufficient under Rule 12(b)(6)….8

      C.    In evaluating the allegations cumulatively, the Court should keep in mind
G&E's fiduciary status and its stated views on class counsel fee agreements…12

III.    The denial of a non-party's hollow and time-barred Rule 60(b) motion
in the Tyco Litigation has no preclusive effect on the claims in this case……………15

CONCLUSION…………………………………………………………………………18

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Andrew Robinson Int'l v. Hartford Fire Insurance*,
  547 F.3d 48 (1st Cir. 2008)……………………………………………………...7

*Artuso v. Vertex Pharm., Inc.*,
  637 F.3d 1 (1st Cir. 2011)……………………………………………………….7

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)……………………………………………………...7,10,14,18

*Balsamo v. UNH*,
  2011 DNH 150………………………………………………………………………11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)…………………………………………………………*passim*

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
  2003 WL 22417252 (D. Me. 2003)……………………………………………16

*D'Angola v. Upstate Management Services LLC*,
  2011 DNH 185………………………………………………………………………11

*Duncan v. Theratx, Inc.*,
  775 A.2d 1019 (Del. 2001)……………………………………………………….8

*Flynn v. AK Peters, Ltd.*,
  377 F.3d 13 (1st Cir. 2004)……………………………………………………….3

*Garr v. U.S. Healthcare, Inc.*,
  22 F.3d 1274 (3d Cir. 1994)…………………………………………………….15

*Gonzalez v. Walgreens Co.*,
  918 F.2d 303 (1st Cir. 1990)…………………………………………………….15

*Gonzalez-Gonzalez v. United States*,
  257 F.3d 31 (1st Cir. 2001)……………………………………………………7,12

*Hydrite Chem. Co. v. Calumet Lubrics. Co.*,
  47 F.3d 887 (7th Cir. 1995)……………………………………………………….3

*Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*,
    2009 WL 1111179 (Del. Ch. Apr. 27, 2009)…………………………………………………4

*Karak v. Bursaw Oil Corp.*,
    288 F.3d 15 (1st Cir. 2002)…………………………………………………………...16

*Kronos, Inc. v. AVX Corp.*,
    81 N.Y.2d 90 (1993)…………………………………………………………………...4

*Neitzke v. Williams*,
    490 U.S. 319 (1989)……………………………………………………………………6

*Nevitt v. United States*,
    886 F.2d 1187 (9th Cir. 1989)………………………………………………………...15

*Nucor Corp. v. Nebraska Public Power Dist.*,
    999 F.2d 372 (8th Cir. 1993)…………………………………………………………15

*Ocasio-Hernández v. Fortuño-Burset*,
    640 F.3d 1 (1st Cir. 2011)………………………………………………………7,11,12,13

*Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*,
    908 F.2d 1363 (7th Cir. 1990)…………………………………………………………3

*Richards v. Jefferson County*,
    517 U.S. 793 (1996)…………………………………………………………………17,18

*Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*,
    40 F.3d 247 (7th Cir. 1994)…………………………………………………………10,11

*Santiago v. Puerto Rico*,
    655 F.3d 61 (1st Cir. 2011)……………………………………………………………7

*SEC v. MacDonald*,
    699 F.2d 47 (1st Cir. 1983)…………………………………………………………...5,6

*Sepúlveda-Villarini v. Dep't of Educ. of P.R.*,
    628 F.3d 25 (1st Cir. 2010)…………………………………………………………7,11,12

*Smith v. Bayer Corp.*,
    131 S. Ct. 2368 (2011)………………………………………………………………...17

*South Central Bell Tel. Co. v. Alabama*,
    526 U.S. 160 (1999)…………………………………………………………………...17

*Spark v. MBNA Corp.*,
    289 F. Supp. 2d 510 (D. Del. 2003)……………………………………………………..16

*Taylor v. NationsBank*,
    776 A.2d 645 (Md. App. 2001)……………………………………………………...4

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)…………………………………………………………………16, 17

*Thorsen v. Iron and Glass Bank*,
    476 A.2d 928 (Pa. 1984)……………………………………………………………..4

*United States v. Berenguer*,
    821 F.2d 19 (1st Cir. 1987)…………………………………………………………15

*United States v. Marin*,
    720 F.2d 229 (1st Cir. 1983)………………………………………………………..15

*Whitehouse v. Rytman*,
    122 N.H. 777 (1982)………………………………………………………………..4

*Wilcox v. Plummer*,
    29 U.S. 172 (1830)………………………………………………………………...4

**Rules**

Fed. R. Civ. P. 12…………………………………………………………………...6,7,8,9,18

Fed. R. Civ. P. 60…………………………………………………………………...10,15,16,17,18

**Other Authorities**

Restatement (Second) of Contracts…………………………………………………………...4,8

Richard Brooks, "The Efficient Performance Hypothesis", 116 Yale L.J. 568 (2006)…………...8

Charles Fried, *Contract As Promise: A Theory Of Contractual Obligation* (1981)………………8

**TABLE OF ABBREVIATIONS AND DEFINED TERMS**

The following abbreviations and defined terms are used in Plaintiff's reply brief:

| | |
|---|---|
| March 19 Order | The Court's March 19, 2012 order |
| Defendants (collectively) | G&E |
| Exhibits to Plaintiff's brief [1] | Ex. _ |
| Amended Complaint ¶ _ | (¶ _ ) |
| Tyco Litigation | *In re Tyco Int'l, Ltd.*, MDL No. 02-md-1335-PB (D.N.H.) |
| Teachers' Retirement System of Lousiana | TRSL |
| Restatement (Second) of Contracts | Restatement |

---

[1] Exhibits accompany the transmittal declaration of Joseph N. Gielata, Esq. filed herewith.

Plaintiff respectfully submits this brief in accordance with the March 19 Order.

## PRELIMINARY STATEMENT

The Court's perception of an "apparent flaw in plaintiff's theory of liability" (March 19 Order at 2) suggests a misapprehension of Plaintiff's theory of the case. This brief endeavors to clarify the theories of liability and damages in this case, and the dichotomy between them.

The First Circuit strongly disfavors *sua sponte* dismissals, so Plaintiff respectfully refers the Court to the issues fully briefed by the parties in connection with the motion to dismiss and the motion for partial summary judgment. At this stage, the Court should presume the truth of the allegations and resolve any doubts and inferences in Plaintiff's favor. Under this generous standard, the Amended Complaint easily states sufficient and plausible claims.

The essential allegations entitled to the presumption of truth are that: G&E and its co-counsel filed a motion for attorneys' fees requesting 14.5% of the recovery in the Tyco Litigation on October 22, 2007; and the filing of the fee request breached a contract dated January 8, 2004 (the "Contract") (Ex. A) in which G&E expressly agreed to request a fee in accordance with a precise formula. Specifically, the Contract unconditionally obligated G&E to request a fee of no more than 8.7% of the $3.2 billion recovery <u>and</u> to oppose any higher fee request. (Ex. A at 1.)

The breach of contract was complete on October 22, 2007, when G&E signed and submitted a fee request seeking 14.5% instead of 8.7%. The <u>fee request itself constitutes the breach of the Contract</u>, regardless of the Court's subsequent ruling on the fee request dated December 19, 2007. Thus, ***the breach of the Contract occurred before the Court had even <u>seen the fee request</u>***. The Court's ruling on the fee request goes to the quantum of damages, not to liability for breach of contract. When the Court granted the fee request approximately two months after it was filed, the quantum of damages flowing from the breach became fixed.

1

It would be erroneous to conflate the fee *request* and the fee *award*.  To illustrate the distinction: if the fee request had sought 10%, and if the Court had awarded only 5%, then there would still be *liability* for breach of the Contract (because G&E requested a fee of more than 8.7%), but the *remedy* would be nominal damages under contract law or disgorgement under fiduciary law (¶ 55).  By contrast, if the fee request had sought 8.7%, and if the Court had awarded *more* than 8.7% (an implausible act of judicial generosity without precedent), then there would be no liability for breach of contract, even though the fee award exceeded the percentage set forth in the Contract.  Thus, what the Court did (or might have done) after the fee request is germane to measuring damages, but not to pleading or proving liability in this case.

It is not quite accurate to say that the Contract "allegedly limits the total recoverable fees in the [Tyco] action to 8.7% of the total class recovery." March 19 Order at 1.  That is not what the complaint alleges.  Rather, the Contract underlinelimited G&E by obligating it to request a fee of 8.7% of the recovery. (¶¶ 3, 7, 19, 21, 61, 63.)  Liability in this case arises out of underlinewhat G&E did in the fee request.  What resulted *after* G&E broke the Contract relates to damages, not liability.

Suppose G&E had requested 20%, and the Court had awarded 10%.  In this scenario, there would be liability for breach of contract (because the 20% request exceeded the Contract's limitation of 8.7%), but expectation damages would be measured by the difference between 10% and 8.7%.  Thus, the Court's ruling is relevant to measuring damages.  But the breach of contract arises from the percentage *sought* in G&E's fee request, underlinenot the percentage *awarded* in the Court's ruling.  Even if the two numbers match, they are conceptually distinct as a matter of law.  The dichotomy between contractual liability (where the breach itself is the wrong) and any resulting damages is firmly established in the law of contracts.  A fair analysis of the claims in this case should recognize this dichotomy and accurately reflect the allegations in the pleading.

**ARGUMENT**

I.     **What the Court did (or might have done) in 2007 is not germane to the theory of liability in this case because of the particular dichotomy between liability for breach of contract and damages resulting from the breach.**

The Court's perception of an "apparent flaw in plaintiff's theory of liability" (March 19 Order at 2) suggests a misapprehension of the theory of the case.  Under the theory of liability in the Amended Complaint, the Court's view of what it might have done in 2007 is unnecessary. To illustrate this point, the following timeline summarizes the three essential events alleged in this case by:  ( *a* ) date, ( *b* ) factual event, ( *c* ) legal inference and ( *d* ) relevant participants:

| | | | |
|---|---|---|---|
| *a* | **January 8-9, 2004** | **October 22, 2007** | December 19, 2007 |
| *b* | **execution of Contract governing fee request** | **fee request filed** | fee award decision |
| *c* | **<u>Contract Formation</u>** | **<u>Liability for Breach of Contract</u>** | <u>Damages from Breach Fixed</u> |
| *d* | **did G&E act?: Yes**<br>**did Court act?: No** | **did G&E act?: Yes**<br>**did Court act?: No** | did G&E act?: No<br>did Court act?: Yes |

In the timeline above, only the first and second events are relevant to the theory of liability for breach of contract.  "Liability in a contract case…does not depend on proof of injury. Proof of liability is complete when the breach of contract is shown." *Hydrite Chem. Co. v. Calumet Lubrics. Co.*, 47 F.3d 887, 890-91 (7th Cir. 1995) (Posner, J.).  Therefore, "a failure of proof of damages does not justify the dismissal of a claim for breach of contract, as it does most tort claims." *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1372 (7th Cir. 1990) (Posner, J.).  *Cf. Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 23 (1st Cir. 2004) ("Flynn is correct that she would have been entitled to nominal damages even if she could not prove actual damages as part of her contract claim. Under Massachusetts law, a person who is injured by a breach of contract has a right to judgment even if the breach caused no harm.").

The dichotomy between liability and damages in contract cases is well-settled and centuries-old. *See, e.g., Wilcox v. Plummer*, 29 U.S. 172, 182 (1830) ("When the attorney was chargeable with negligence or unskilfulness, **his contract was violated, and the action might have been sustained immediately**. Perhaps, in that event, no more than nominal damages may be proved, and no more recovered; but on the other hand, it is perfectly clear, that the proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict.  If so, it is clear **the damage is not the cause of action**.") (emphasis added).[1]

The key point here, in light of the dichotomy between liability for breach and damages, is that ***the breach of the Contract occurred before the Court had even <u>seen</u> the fee request***. G&E's breach of the Contract was complete on October 22, 2007, when it signed and submitted the fee request seeking 14.5% instead of 8.7%.   The Contract expressly and unconditionally specifies the formula for the percentage that G&E agreed to request (8.7%) and therefore the act

---

[1] The Restatement (Second) of Contracts refers to the breach of a contract independent from any damages. *See* § 346 & cmt. b.  *See, e.g., Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*, 2009 WL 1111179, at *12 (Del. Ch. Apr. 27, 2009) ("Even if compensatory damages cannot be or have not been demonstrated, the breach of a contractual obligation often warrants an award of nominal damages."); *Taylor v. NationsBank*, 776 A.2d 645, 651 (Md. App. 2001) ("It is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages.") (citing Maryland cases); *Thorsen v. Iron and Glass Bank*, 476 A.2d 928 (Pa. 1984) ("If a plaintiff is able to prove a breach of contract but can show no damages flowing from the breach, the plaintiff is entitled to recover nominal damages. [Citations omitted.] A grant of summary judgment on the sole basis of absence of provable damages, therefore, is generally improper."); *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 96 (1993) ("Fundamentally different functions are served by an action in tort on the one hand, and an action in contract on the other, and an understanding of that functional difference is critical to understanding why nominal damages are appropriate in one and not in the other. Contract liability is 'imposed by the law for the protection of a single, limited interest, that of having the promises of others performed…The law of torts…is concerned with the allocation of losses arising out of human activities' (*Prosser and Keeton*, [*on Torts*], at 5-6 [5th ed.]). In other words, a party's rights in contract arise from the parties' promises and exist independent of any breach. Nominal damages allow vindication of those rights."); *Whitehouse v. Rytman*, 122 N.H. 777, 780-81 (1982) (remanding for determination of whether plaintiffs could prove entitlement to more than nominal damages where liability for unjustified breach of contract had been established).

of preparing and submitting the 14.5% fee request constitutes G&E's breach of the Contract, regardless of the subsequent ruling on the fee request.  The Court's ruling on the fee request fixed the quantum of damages, but it is not germane to the issue of liability.  Even if the Court had declined to award *any* fees, G&E would *still* be liable for breach of the Contract.  The three illustrations below aim to further clarify the theory of the case:

**Suppose:** the co-lead counsel <u>other than G&E</u> had requested 14.5% of the recovery; G&E <u>opposed</u> the fee request (as the Contract required) and contended that the appropriate fee should be 8.7%; and the Court awarded 14.5%.  **Inference:** G&E did not breach the Contract.

**Suppose:** the co-lead counsel other than G&E had requested 14.5% of the recovery; G&E opposed the fee request and requested a <u>10%</u> fee; and the Court awarded 14.5%. **Inference:** G&E breached the Contract (because it requested more than 8.7%) and the measure of expectation damages is the difference between 8.7% (expected) and 14.5% (realized).

**Suppose:** the co-lead counsel other than G&E had requested 14.5% of the recovery; G&E opposed the fee request and requested a 10% fee; and the Court awarded <u>5%</u>.  **Inference:** G&E breached the Contract but here there are no expectation damages because the fee award is less than 8.7%.  (However, the alternative remedy of disgorgement remains available.)

There is an analytically distinct hypothetical:  suppose G&E had <u>disclosed</u> the Contract, but requested 14.5%. This would still constitute a complete breach, since the Contract says nothing about its disclosure. The theory of liability remains the same. After learning of the Contract and its breach, there might have been more opt-outs and an outcry of objections from institutional and individual investors.  We will never know for certain.  The uncertainty inherent in this hypothetical is attributable to G&E's decision not to disclose the Contract; accordingly, such uncertainty is to be cast on G&E as the wrongdoer. *See, e.g., SEC v. MacDonald*, 699 F.2d

47, 55-56 (1st Cir. 1983) ("[I]t is a settled principle of even private equity that where the nature of a wrong makes damage calculations difficult, as here, it is better to give the plaintiff a windfall than to permit the wrongdoer to profit from his wrong. [Citations omitted.] At the very least, the burden is on the wrongdoer to prove the appropriateness of a lower measure.").  More to the point, any inferences or doubts should be resolved in favor of Plaintiff at this stage.

In sum, Plaintiff's theory of liability, once perceived correctly, is sound and viable independent of what the Court might have done in 2007.  Therefore, the Court should proceed to adjudicate the parties' dispositive motions on their merits.  (The Court may vacate its denial of the Rule 12(b)(6) motion *nunc pro tunc* in lieu of directing the parties to refile their briefs.)

## II.     The First Circuit strongly disfavors *sua sponte* dismissals and therefore the Court should rigorously apply Rule 12(b)(6)'s liberal standard of review.

In the March 19 Order, the Court denied G&E's Rule 12(b)(6) motion without prejudice and signaled its inclination to dismiss the Amended Complaint *sua sponte* in view of the Court's determination "that the fee agreement on which the current lawsuit is based would not have affected [its] fee award."  March 19 Order at 2.  The Amended Complaint alleges that a fee request conforming to the Contract would have yielded a higher net recovery for class members. (¶ 38.) If the Court does not afford that allegation the presumption of truth under a Rule 12(b)(6) analysis, then the framework for legal analysis would be unclear.  (Plaintiff requests notice and an opportunity to respond if the Court invokes a different rule.) "What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations. District court judges looking to dismiss claims on such grounds must look elsewhere for legal support." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (cited with approval in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Twombly*, 550 U.S. at 556.

A.     **The detailed and well-grounded allegations in the complaint are entitled to the presumption of truth.**

Assuming that the Court will apply Rule 12(b)(6)'s liberal and "plaintiff-friendly" standard of review, *Andrew Robinson International v. Hartford Fire Insurance*, 547 F.3d 48, 51 (1st Cir. 2008), then it should "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011). The complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). But "detailed factual allegations" are not necessary. *Twombly*, 550 U.S. at 555. Rather than evaluate individual allegations in isolation, courts should "evaluate the cumulative effect of the factual allegations." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 14 (1st Cir. 2011). Although conclusory allegations are not assumed true, "[a]llegations of discrete factual events…are not 'conclusory' in the relevant sense." *Ibid.*

As former Justice Souter explained, "*Twombly* cautioned against thinking of plausibility as a standard of likely success on the merits; the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556).

Because "a *sua sponte* dismissal engenders especially rigorous appellate review", *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011), the Court should apply Rule 12(b)(6)'s standard of review with special care. The First Circuit has warned that *sua sponte* dismissals are "risky business" and therefore imposed an exceptionally high standard of appellate review: "We will uphold a *sua sponte* order of dismissal only if the allegations contained in the complaint, taken in the light most favorable to the plaintiff, are patently meritless and beyond all hope of redemption." *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001).

**B.** **The claims in the complaint are plausible and sufficient under Rule 12(b)(6).**

At this early stage, the following allegations are entitled to the presumption of truth:

(1) G&E entered into a binding contract which unconditionally obligated it to request a

fee of 8.7% of the recovery in the Tyco Litigation. (¶¶ 7, 21, 61.)

(2) G&E broke the contract on October 22, 2007, when the fee request it signed and filed

sought 14.5% of the recovery. (¶¶ 6, 31, 63, 64.)

As shown in Part I, these two discrete factual events would plausibly establish liability

for breach of contract (assuming that no affirmative defense is ultimately proved). The Contract

clearly specifies G&E's obligations, which exist apart from the Court's ruling on the fee request.

Having alleged specific facts that plausibly establish liability for breach of contract, the

following allegation in the Amended Complaint would plausibly show damages:

(3) Unaware of the Contract, the Court granted the 14.5% fee request. (¶ 37.) If the

Contract had been fully performed by G&E, members of the class would have

received an additional $185 million. (¶ 38.)

Theories of expectation damages for breach of contract are "necessarily hypothetical,"

*i.e.*, if the contract had been fully performed, what would have happened?[2] Here the central

allegation is that the fee request should have followed the formula set forth in the Contract.

Thus, for the theory of damages, the Court should presume as true that the fee request would

have sought 8.7% if the Contract had been fully performed — under this counterfactual scenario,

---

[2]*Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001). *Cf.* Richard Brooks, "The Efficient Performance Hypothesis", 116 Yale L.J. 568, 577-78 (2006) ("In general, the court seeks to undo the effect of either the breach or the promise on one or both parties. In other words, the court is attempting to realize the equivalent of some <u>counterfactual state</u>.") (emphasis added); Charles Fried, *Contract As Promise: A Theory Of Contractual Obligation* 17 (1981) ("If I make a promise to you, I should do as I promise; and if I fail to keep my promise, it is fair that I should be made to hand over the equivalent of the promised performance. In contract doctrine this proposition appears as the expectation measure of damages for breach."); Restatement § 344(a).

<u>there would not have been a 14.5% fee request</u>.  This hypothetical allegation is proposed to measure expectation damages, as in any breach of contract case.  To illustrate that the Court's knowledge of the Contract is immaterial in this counterfactual, suppose allegation (3) is revised:

> (4) *After being made aware of the Contract*, the Court granted the 14.5% fee request.  If the Contract had been fully performed by G&E, members of the class would have received an additional $185 million. (¶ 38.)

Regardless of whether allegation (3) or allegation (4) is assumed to be true, damages would still be measured by the difference between what the Court actually awarded and what the Contract specified (hypothetically assuming that the Contract had been fully performed).  The Court's *awareness* of the Contract is immaterial to the measure of damages.[3]  **Neither the theory of contractual liability nor the theory of expectation damages turns on what the Court believes it would have done.**  Bolstering this conclusion, Plaintiff alternatively seeks disgorgement, for which no counterfactual analysis is required. (¶ 55 & Prayer for Relief ¶ D.)

To reiterate, the Court should assume as true that: (1) G&E was bound by the Contract; (2) G&E breached the Contract by requesting a fee exceeding 8.7% of the recovery; (3) G&E breached the Contract by failing to oppose a fee request for more than 8.7% of the recovery; and (4) G&E's breaches of the Contract caused damages because the fee request (and consequently the award) would have been lower had the Contract been fully performed.  Any questions of disputed fact are to be resolved by the trier of fact ultimately, but the Court should presume these inferences in favor of Plaintiff at the Rule 12(b)(6) stage.  *See Twombly*, 550 U.S. at 563 ("once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the

---

[3] Had G&E disclosed the Contract to the Court and the class, it might have had a colorable basis to claim res judicata, but instead it chose to keep the Contract hidden from everyone.  This is a wholly separate issue.  G&E did not disclose the Contract, so res judicata is not a valid defense.

hypotheses are consistent with the complaint'") (quoting *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). The detailed allegations far surpass the factually-barren and conclusory claims in *Twombly* and *Iqbal*.  G&E has already admitted that it entered into the Contract, and both the fee request and fee obtained are undisputed.  (G&E disputes the Contract's plain meaning, but the construction of the Contract is a question of law that has been fully briefed for the Court's review in the motion for partial summary judgment.)

G&E may theorize that the other co-lead counsel conceivably might have requested 14.5% even if G&E had opposed the request (as it agreed to do in the Contract).  G&E actually did this in the *Oxford* securities litigation (*see* Ex. B; *excerpted at* (¶ 24)), so it is not without precedent. What would this Court have done? This hypothetical is unripe as an affirmative defense for which the burden to plead and prove rests on G&E, and it cannot be answered without nuanced discovery (in which Your Honor would appear to be a necessary witness).

The Court has stated: "I already determined when denying a Rule 60(b) motion in the [Tyco] litigation that the fee agreement on which the current lawsuit is based would not have affected my fee award." March 19 Order at 2.  This statement is susceptible to more than one meaning.  It perhaps means that the Court would not have ruled differently if G&E had <u>disclosed</u> the Contract.  But does it also mean that the Court would have awarded 14.5% even if the fee request *did not seek 14.5%*?  If G&E had requested 8.7%, would the Court have awarded *more* than 8.7%? If all the class counsel had requested 8.7%, would the Court *still* have awarded 14.5%?  That would be unprecedented and uniquely implausible, given that courts do not award lawyers *more* in fees than requested.  The Court should not make these implausible inferences.

G&E is not above the law of contracts.  It has asserted a variety of standard (but unavailing) defenses to the claim that it breached the Contract: release, discharge, res judicata,

mistake, ambiguity, etc.  The parties have fully briefed these issues in the motion to dismiss and

in the motion for partial summary judgment.  Plaintiff respectfully requests that the Court decide

the issues briefed with the motions, especially since the First Circuit strongly disfavors *sua

sponte* dismissals.  It would be irregular to dispense with due process and dismiss a complaint by

disregarding the particular factual allegations in the pleading.  As this Court observed last year:

> [T]he court may not disregard properly pleaded factual allegations or "attempt to
> forecast a plaintiff's likelihood of success on the merits." *Ocasio-Hernandez v.
> Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). An inference that a plaintiff asks
> the court to draw from pleaded facts will not fall short under the plausibility test
> merely because "other, undisclosed facts may explain the sequence better."
> *Sepulveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010).

*Balsamo v. UNH*, 2011 DNH 150, 7-8.  Based on objective documentary evidence, the breach of

contract allegations in this case are far more specific and plausible than the tenuous allegations

found sufficient to state a claim for breach in *Balsamo*.  *Ibid*.  If the Court "credit[s] as true [the

pleader's] version of events and draw[s] all reasonable inference in his favor, as [it] must do at

this stage," *D'Angola v. Upstate Management Services LLC*, 2011 DNH 185, 9, then the detailed

claims in the Amended Complaint easily satisfy Rule 12(b)(6)'s liberal standard of review.

    If G&E had come forward with the Contract in 2007, this litigation would not exist.  As a

matter of simple equity, the Court should recognize that this litigation is entirely of G&E's own

making.  Also worth observing:  the Court should not presume or infer that TRSL was aware of

the Contract in 2007, since the "plaintiff 'receives the benefit of imagination, so long as the

hypotheses are consistent with the complaint'[.]" *Twombly*, 550 U.S. at 563 (quoting *Sanjuan*, 40

F.3d at 251 (Easterbrook, J.)).[4]  If discovery reveals that TRSL was in fact <u>unaware</u> of the

---

[4] This troubling issue is addressed in connection with the motion for partial summary judgment.
*See* Pltff's Reply, Doc. #80 at 6-7 (noting that declarant who became director of TRSL in 2005
made no reference to the Contract in 2007 and likely may not have known of the Contract).

Contract in 2007, when it concurred with the 14.5% fee request, then the case against G&E would show egregious bad faith by a fiduciary extending well beyond mere breach of contract.

In sum, the plausibility of the claims is not in question, given that "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." *Sepúlveda-Villarini*, 628 F.3d at 30.  The Amended Complaint is firmly grounded on specific provisions in the Contract, the authenticity of which is not disputed. (The unambiguous provisions of the Contract are examined in detail in connection with Plaintiff's motion for partial summary judgment. *See* Doc. #70-1 at 6-8.)  As shown in Part I, the Court's view of what it would have done in 2007 is not germane to the theory of liability.  As shown in Part II.B, the Court's ruling fixed damages (*i.e.*, it made expectation damages ascertainable), but its view of what it would have done in 2007 is not material to measuring expectation damages.  The theories of liability and damages are logical and based on specific, objective and documented facts.  There is no basis to find that the Amended Complaint is "patently meritless and beyond all hope of redemption." *Gonzalez-Gonzalez*, 257 F.3d at 37.  Dismissal *sua sponte* would be inappropriate and therefore the Court should adjudicate the parties' dispositive motions on their merits.

C.   **In evaluating the allegations cumulatively, the Court should keep in mind G&E's fiduciary status and its stated views on class counsel fee agreements.**

In the Amended Complaint, additional allegations reinforcing the essential claims are G&E's fiduciary status and its stated positions on the function of fee agreements in class actions. As held in *Ocasio-Hernández*, *supra*, the Court should "evaluate the cumulative effect of the factual allegations." 640 F.3d at 14.  "The question confronting a court on a motion to dismiss is whether *all* the facts alleged, when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible."  *Ibid* (emphasis in original) (citing *Twombly*, 550 U.S. at 569 n.14).  "Indeed, the Supreme Court has suggested that allegations that would individually

lack the heft to make a claim plausible may suffice to state a claim in the context of the complaint's other factual allegations." *Id.* at 15 (citing *Twombly*, 550 U.S. at 557 ("An allegation of parallel conduct … gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility.")).

Although this brief has focused on the breach of contract claim (Count II), there is also a broader claim for breach of fiduciary duty (Count I). G&E's fiduciary status in the Tyco Litigation is indisputable. (¶ 33.) Since the law imposes the highest standard of conduct on a fiduciary, that status should weigh against G&E in evaluating whether G&E should have honored the Contract and disclosed it for the class members and the Court to consider in 2007. Count I has two components: (1) a breach of the duty of loyalty for dishonoring the Contract; and (2) a breach of the duty of candor for failing to disclose the Contract in 2007. (¶ 51.) Given the allegation that G&E did not adhere to the Contract, betraying class members (¶ 53), the legal inference to be drawn at this stage is that G&E breached its fiduciary duty of loyalty.  G&E indisputably did not disclose the Contract in 2007, so the legal inference to be drawn at this stage is that G&E breached its fiduciary duty of candor.  (*Ibid.*)  Additionally, the fiduciary aspect enhances the plausibility of G&E's breach of the Contract because this is not a *caveat emptor* fact pattern between equally powerful and equally knowledgeable bargaining parties.

G&E's unequivocal statements on class counsel fee agreements should further inform the Court's evaluation of the allegations.  For instance, in the *Oxford* securities litigation, where G&E represented co-lead plaintiff "ColPERA," the law firm forcefully articulated this position:

> The [Private Securities Litigation Reform Act] has fundamentally shifted the awarding of attorneys' fees in securities class actions. **It is unequivocal** that Lead Plaintiffs are to select Lead Counsel and **that fee arrangements between Lead Plaintiffs and Lead Counsel should be honored.** [Emphasis added.] …
> [T]he ColPERA fee arrangement should be held to act as a cap on all Lead Counsel attorneys' fees, even though [co-lead counsel] are not signatories to the

13

ColPERA agreement, because of the unique nature of the governing structure adopted by this Court. ColPERA and G&E are the only members of the Lead Plaintiff group that produced a fee agreement in this case during class discovery (or otherwise). The details of the ColPERA agreement have been known since class discovery, and no one has ever indicated that some alternative fee agreement should govern attorneys' fees in this case. Inasmuch as the ColPERA agreement will result in the lowest fee, thus maximizing recovery to the Class, all Lead Plaintiffs and their counsel should be found to have acquiesced in the ColPERA fee arrangement and it should be held to be binding on all Lead Plaintiffs and their counsel. Such an arrangement is not unreasonable, since it would result in a fee of $60 million, which clearly is a substantial amount. [(¶ 24.) *See also* Ex. B.]

The fee contract in *Oxford* (Ex. B (attached to motion)) is largely identical to the Contract in this case. Notably, G&E was co-lead counsel with other law firms in *Oxford* (just as in the Tyco Litigation) and advocated that its fee agreement should bind <u>all</u> of the co-lead counsel.

Separately, G&E's co-founding attorney candidly explained the critical importance of fee agreements in shareholder class actions in a 2001 affidavit supporting G&E's fee application:

I believe that, where institutional investors negotiate *ex ante* fee agreements that they consider to be in the best interests of the class, it is the terms of those agreements, not the number of hours expended or any other criteria, that should control the award of fees. Otherwise, plaintiffs' attorneys would lack a financial incentive to reach prompt and efficient settlements, even if it is in the best interests of the class to do so, because their fee awards may depend upon the number of hours (no matter how unproductive) they are able to pump into the case. [March 13, 2001 Affidavit of Stuart M. Grant, excerpted at (¶ 25).]

G&E could not have been more clear when it proclaimed that "[i]t is unequivocal…that fee arrangements between Lead Plaintiffs and Lead Counsel should be honored." (¶ 24.) This emphatic and clear-cut statement reinforces the sworn testimony that "it is the terms of [*ex ante* fee] agreements…that should control the award of fees." (¶ 25.) Both of these statements buttress the plausibility of the claims in this case. Under the analytical framework established by the Supreme Court and clarified by the First Circuit, the Court should evaluate the detailed allegations in the Amended Complaint in the harsh light of G&E's own words and its fiduciary duties. Viewed *in toto*, the claims far exceed the pleading standard in *Twombly* and *Iqbal*.

14

III.    **The denial of a non-party's hollow and time-barred Rule 60(b) motion in the Tyco Litigation has no preclusive effect on the claims in this case.**

More than three months after this case was commenced, purported class member Jeffrey Van Fossen filed a four-page "Motion to Vacate Fee Award" in the Tyco Litigation. The only exhibit attached to the Rule 60(b) motion was Plaintiff's initial complaint. Thus, the sole issue presented by Van Fossen's motion was whether the Court should vacate or reopen the fee order in the Tyco Litigation due to *someone else filing allegations*, and nothing more. Van Fossen did not have a shred of evidence. His lawyer did not even have a copy of the Contract to show the Court. Blatantly violating Rule 11, he presented nothing more than naked allegations filed by other attorneys. *Cf. Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1280 (3d Cir. 1994) (affirming Rule 11 sanctions on attorneys who had copied another attorney's complaint because "Rule 11 requires that an attorney signing a pleading must make a reasonable inquiry *personally*."). In the Court's words, there was "[n]othing in the motion to vacate" to warrant reassessing the fee order. This perfectly describes Van Fossen's motion to vacate: *it contained essentially nothing*.[5]

The specific relief sought in Van Fossen's motion further exposes its emptiness. Van Fossen **demanded a copy of the Contract** based solely upon the allegations in Plaintiff's initial complaint (which did not include a copy of the Contract). Without having even *seen* the Contract, he boldly asked the Court to vacate the fee award in the Tyco Litigation under Rule 60(b). Rule 60(b) motions are rarely granted in the first place, so it is unsurprising that the Court

---

[5] The Rule 60 motion was absolutely barred by the one-year-post-judgment time limit in Rule 60(c)(1), *see United States v. Berenguer*, 821 F.2d 19, 21 (1st Cir. 1987); *United States v. Marin*, 720 F.2d 229, 231 (1st Cir. 1983); *Gonzalez v. Walgreens Co.*, 918 F.2d 303 (1st Cir. 1990), so the Court arguably lacked jurisdiction to consider it. *See Nevitt v. United States*, 886 F.2d 1187, 1188 (9th Cir. 1989) ("Since the Rule 60(b)(2) motion was not filed within one year of entry of judgment, the district court lacked jurisdiction to consider it."); *Nucor Corp. v. Nebraska Public Power Dist.*, 999 F.2d 372, 376 (8th Cir. 1993) ("We hold NPPD's motion under Rule 60(b) … was untimely, and that the district court had no jurisdiction to consider the motion.").

swiftly denied Van Fossen's hollow motion.  *See Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002) ("[R]elief under Rule 60(b) is extraordinary in nature and…motions invoking that rule should be granted sparingly.").  The Van Fossen motion was, in short, a "Hail Mary pass" doomed to failure.  To preclude the otherwise viable claims of numerous nonparties because one ill-advised individual filed a foolhardy motion would make a mockery of due process.  For all we know, Van Fossen may not even be a class member in this case.

G&E has argued elsewhere that Van Fossen's lawyer is notorious for filing flimsy objections designed solely to extract fees by settling for nuisance value on appeal, ***precisely as he did here***.  *See Blessing v. Sirius XM Radio, Inc.*, No. 09-10035, Doc. #125 (S.D.N.Y. July 18, 2011) Ex. C at 21-22 & n.14 (G&E lists criticisms of John J. Pentz and his "documented history" of filing appeals in settled class actions, only to dismiss appeals after being paid by class counsel).   In assessing the purported contribution conferred on the class by Mr. Pentz's objection, the court in *Spark v. MBNA Corporation*, 289 F. Supp. 2d 510, 514 (D. Del. 2003), stated that "[t]he objector's 'opposition' to class counsel's fee petition appears to be nothing more than an attempt to receive attorneys' fees."  *Ibid*; *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 WL 22417252, at *2 n.3 (D. Me. 2003) (stating that Pentz "appears to be a repeat objector in class action cases" who "filed a groundless objection").

Against that backdrop, there is no legal basis for the summary denial of Van Fossen's nuisance motion to have any preclusive effect on the claims in this case.  With rare exceptions, a judgment does not bind a nonparty.  *See Taylor v. Sturgell*, 553 U.S. 880, 898 (2008) ("[O]ur decisions emphasize the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party.").  The law of judgments departs from this principle only in narrowly defined exceptions.  The only exception relevant here is that absent members of a

class in a properly conducted class action may be subject to preclusion once class certification has been granted because of the due-process protections afforded absent members under Rule 23. *See Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2381 (2011) ("We could hardly have been more clear that a 'properly conducted class action,' with binding effect on nonparties, can come about in federal courts in just one way—through the procedure set out in Rule 23.").

Van Fossen's motion does not satisfy any of the minimum requisites for nonparty preclusion with respect to the claims in this case. Nowhere in his motion does Van Fossen purport to represent a class (pursuant to Rule 23 or otherwise). Van Fossen's motion was brought strictly on his own behalf, and it cannot bind anyone other than himself.

A quartet of recent Supreme Court precedents has unequivocally limited nonparty preclusion. *See Richards v. Jefferson County*, 517 U.S. 793 (1996) (someone challenging a state tax cannot consistently with due process be bound by a previous decision upholding it when: (a) he received no notice of the previous case; and (b) the party challenging the tax in the previous case was not designated a class representative or otherwise designated to represent the interests of nonparties); *South Central Bell Tel. Co. v. Alabama*, 526 U.S. 160, 167-68 (1999) (holding that even when the nonparty knew of the first case and the same lawyer participated in representing both challengers to the tax, the nonparty could not constitutionally be bound); *accord Taylor*, 553 U.S. at 889-90 & 897-98 (rejecting "virtual representation"); *Smith*, 131 S. Ct. at 2380 ("Neither a proposed class action nor a rejected class action may bind nonparties.").

Van Fossen's Rule 60(b) motion plainly was not a certified class action. It was brought individually; no class definition was proposed; no right to opt out was offered; no finding of adequate representation was made; and no notice was given. Indeed, Plaintiff was not notified of Van Fossen's motion until *after* it was denied. Had Van Fossen instead filed a legitimate class

action, it would have differed in procedurally and ethically salient ways. The court would have certified the class only on compliance with rules meant to ensure adequate representation and commonality of interest.  Specification of the class would have informed representatives whom they were representing, and courts and class members who was to be bound.  The class representatives, their counsel, and the court itself would have been obligated to protect the interests of absent class members. Class members would have had an opportunity to be heard, would share in the benefits of any favorable judgment, and would be bound by an unfavorable one.  Van Fossen "did not sue on behalf of a class," his motion "did not purport to assert any claim against or on behalf of any nonparties," and the judgment "did not purport to bind" nonparties. *Richards*, 517 U.S. at 801.  In short, because the Van Fossen motion did not even purport to be a properly conducted class action, the class-action exception to the rule against nonparty preclusion does not apply to this case.

Van Fossen's hollow motion offers no basis for preclusion of the claims in this case. Accordingly, Plaintiff is entitled to litigate his claims without being bound by a proceeding of which he received no notice, and in which no one was designated to speak for him.  There is no basis to depart from the essential principle that a judgment does not bind a nonparty. The due process protections afforded to absent class members should not be so lightly disregarded.

## CONCLUSION

For all the above reasons, Plaintiff respectfully requests that the Court evaluate the sufficiency of the claims in accordance with Rule 12(b)(6)'s plaintiff-friendly standard of review.  The well-grounded allegations and claims in the Amended Complaint are plausible and sufficient under *Twombly* and *Iqbal*. The summary denial of Van Fossen's Rule 60(b) motion has no preclusive effect and provides no valid or logical basis for *sua sponte* dismissal of this case.

This case was commenced 20 months ago.  The parties have fully briefed a motion to dismiss and a motion for partial summary judgment.  The rulings on the dispositive motions will determine the scope of discovery and the scope of further proceedings.  As set forth in the briefs, Plaintiff respectfully submits that the Court should deny G&E's motion to dismiss as devoid of merit and grant the motion for partial summary judgment on liability for breach of the Contract.

Respectfully submitted,

Dated:  April 2, 2012                                                    /s/ *Joseph N. Gielata*

| CRONIN & CO. LTD. | PHILLIPS LAW OFFICE, PLLC | JOSEPH N. GIELATA LLC |
|---|---|---|
| Thomas C. Cronin, Esq. | Roger B. Phillips, Esq. | Joseph N. Gielata, Esq. |
| (admitted *pro hac vice*) | NH Bar No. 2018 | (admitted *pro hac vice*) |
| 33 North Dearborn Street | 104 Pleasant Street | 501 Silverside Road No. 99 |
| Chicago, Illinois 60602 | Concord, NH 03301 | Wilmington, DE 19809 |
| tcc@cronincoltd.com | roger@phillipslawoffice.com | joe@gielatalaw.com |
| (312) 201 – 7100 | (603) 225 – 2767 | (302) 507 – 4400 |

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically on the above date and served electronically on all registered participants by operation of the Court's electronic filing system.

/s/ *Joseph N. Gielata*